# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:14-CV-00632-GCM

| | |
|---|---|
| STEVEN C. POIRIER, | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | )     **ORDER**<br>) |
| CAROLYN W. COLVIN, | )<br>)<br>) |
| **Defendants.** | )<br>) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Memorandum in Support (Doc. No. 12), both filed on April 3, 2015; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 13) and Memorandum in Support (Doc. No. 14), filed on May 27, 2015. On June 6, 2013, the parties filed a Joint Status Report informing the Court that the Fourth Circuit's recent decision in in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) had been addressed in the parties initial briefing. (Doc. No. 16) Plaintiff, represented by counsel, seeks review of an unfavorable decision by the Commissioner finding that he was not disabled under the Social Security Act.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and the Commissioner's Decision is **VACATED**. This matter will be remanded to the Social Security Administration for further proceedings consistent with this order.

## I.     BACKGROUND

Plaintiff Steven C. Poirier filed a Title II application for disability insurance benefits on December 23, 2009, alleging a disability onset date of November 13, 2000. (Tr. 46) He later amended his alleged onset date to reflect that his disability began on February 2, 2010. (Tr. 48) His claim was initially denied on July 13, 2010, and upon reconsideration on September 27, 2010. (Tr. 46) Plaintiff filed a request for a hearing on November 14, 2010. (Tr. 46) A hearing was held before Administrative Law Judge ("ALJ") Russell R. Sage on November 3, 2011, in Charlotte, North Carolina. (Tr. 46) Plaintiff appeared at the hearing and testified, represented by a non-attorney representative. (Tr. 46) On November 17, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 46-56)

Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 28-30) The Appeals Council denied review on April 26, 2013. (Tr. 28-30) Plaintiff requested that the Appeals Council reconsider its decision and submitted new evidence. On September 15, 2014, the Appeals Council again denied review. (Tr. 1-4) Accordingly, the ALJ's decision became the Commission's final decision in this case. (Tr. 1-4)

Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right to review of the Commissioner's final decision, and he timely filed the present action on July 15, 2014. (Doc. No. 1). The parties' Motions for Summary Judgment are now ripe for review.

## II.     STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner

applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Rather, they must uphold the decision of the Commissioner, even in instances where they would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456. The issue before this Court, then, is not whether Plaintiff is disabled, but whether the ALJ correctly applied the relevant law and reached a finding that is supported by substantial evidence.

### III. ANALYSIS

The ALJ considered whether Plaintiff was disabled under the Social Security Act between his amended alleged onset date of February 2, 2010 and the ALJ's November 17, 2011 decision date. (Tr. 48) To establish that he is entitled to benefits, Plaintiff has the burden of proving he was disabled within the meaning of the Act during this period. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

As an initial matter, a claimant must meet the insured status requirements of the Social Security Act. If the ALJ finds that the claimant was insured during the relevant period, the ALJ uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520. If the ALJ determines that a claimant is conclusively disabled, or not disabled, at any step, the inquiry ends and the ALJ need not proceed to the other steps. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering his RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work is available in sufficient numbers in the national economy which the claimant could perform. *Id.* at 1205 (citation omitted).

Here, the ALJ found that Plaintiff was insured as required, and that he had not been engaged in substantial gainful activity since his amended alleged onset date. (Tr. 48) The ALJ noted that Plaintiff had received unemployment benefits in the first, third, and fourth quarters of 2010, as well as in the first quarter of 2011, but he found that "clearly these earnings were not in exchange for gainful activity." (Tr. 48) At step two, the ALJ found that Plaintiff has two

4

medically determinable and severe mental impairments: bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). (Tr. 48-49) The ALJ further found that Plaintiff has no medically determinable physical impairments. (Tr. 49) Next, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, App'x 1. (Tr. 49)

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels, but that due to his nonexertional limitations, he was restricted to unskilled, simple, routine and repetitive tasks dealing with things in a non-production setting with limited interaction with coworkers and the public. (Tr. 50) Pursuant to these findings, the ALJ concluded that Plaintiff did not have the capacity to perform his past relevant work as a cabinet assembler, sales clerk, assistant manager, or stage hand—positions which range from semi-skilled to skilled. (Tr. 55) Finally, at step five, the ALJ considered Plaintiff's RFC, age, education, and work experience. (Tr. 55) He noted that Plaintiff was 27 years old, and thus a younger individual under the regulations, he had at least a high school education and could communicate in English, and that the Medical-Vocational Guidelines directs a finding of not disabled, regardless of whether Plaintiff had any transferrable job skills. (Tr. 55) The ALJ then explained that, based on these characteristics and Plaintiff's RFC, a sufficient number of jobs exist in the national economy that Plaintiff could perform. (Tr. 56) Specifically, Plaintiff could perform the requirements of representative occupations such as a photo copy machine operator, a router, a wing mailer machine operator, and an ink printer. (Tr. 56) For this reason, the ALJ held that Plaintiff had not been under a disability as defined by the Social Security Act between his amended alleged onset date and ALJ's decision date. (Tr. 56)

On appeal to this Court, Plaintiff presents the following assignments of error: (1) the ALJ failed to conduct a complete function-by-function analysis of Plaintiff's nonexertional limitations; (2) new evidence submitted to the Appeals Council warranted remand; (3) the ALJ improperly analyzed Plaintiff's credibility; and (4) the ALJ erred by analyzing only one of Plaintiff's Global Assessment of Functioning ("GAF") scores when there were several such scores in the medical record. Because the Court finds that the new evidence submitted to the Appeals Council warrants review, it does not address all of Plaintiff's assignments of error.

Plaintiff's argues that the new evidence he submitted to the Appeals Council "filled evidentiary gaps" and thus warranted remand. (Memorandum in Support at 11-15, Doc. No. 12) Claimants who are denied benefits by an ALJ may submit new evidence when they request review by the Appeals Council. 40 C.F.R. § 404.968(a); *id.* § 404.970(b). The Appeals Council will consider evidence if it is new and material, and if it relates to the period on or before the date of the ALJ's hearing. *Id.* § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Medical evaluations that are conducted after the ALJ's decision "are not automatically barred from consideration and may be relevant to prove a disability" that existed before the examination date. *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *see also Savage v. Colvin*, No. 3:12-CV-00394-RJC, 2013 WL 4495194, at *4 (W.D.N.C. Aug. 19, 2013) ("[T]he date on which an examination is conducted is not dispositive.").

The Appeals Council is permitted to "simply deny the request for review," without explaining its reasons for doing so, if the ALJ's action, findings, or conclusions are "not contrary

to the weight of the evidence." *Id.* When the Appeals Council decides to consider the new evidence, this Court includes that evidence when reviewing the ALJ's determination. *Perry v. Colvin*, No. 3:14CV539, 2015 WL 5638215, at *3 (W.D.N.C. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14-CV-00539-MOC, 2015 WL 5655718 (W.D.N.C. Sept. 24, 2015). Under the Fourth Circuit's opinion in *Meyer v. Astrue*, when the new evidence is only opinion of a treating physician in the record on a particular subject, remand may be "particularly helpful." *See Rowe v. Colvin*, No. 3:13-CV-00573-MOC-DL, 2014 WL 6879666, at *1 (W.D.N.C. Dec. 4, 2014) (quoting *Meyer*, 662 F.3d at 706).

Here, the Appeals Council considered new evidence that Plaintiff submitted and thus this Court will determine whether substantial evidence in the supported the ALJ's finding in light of that new evidence. (Tr. 5) In this case, Plaintiff submitted a letter from his treating psychiatrist, Dr. Scott Gleditsch, and his therapist, Lynn Stanton, that included a discussion of Plaintiff's medical history, its effects on his ability to function generally, and their opinions as to his ability to engage in work activities. (Tr. 723-27) The letter is dated November 12, 2012. (Tr. 723) Plaintiff also submitted a Vocational Evaluation dated from March 2, 2102 to July 10, 2012 (Tr. 337-44), as well as 200 pages of treatment records from Behavioral Health. (Tr. 495-722) The Appeals Council determined that all of Plaintiff's newly submitted evidence postdated the ALJ's November 17, 2011 decision date and thus provided no basis for disturbing the ALJ's determination. (Tr. 2)

As for the first piece of evidence, the letter from Plaintiff's psychiatrist and therapist, it was dated November 12, 2012, but it explained that Plaintiff had been a client at the authors' organization since 2008 and detailed a medical history that extended back to that date. In the letter, the authors opined that Plaintiff "lacks the emotional skillsets needed to maintain any type

7

of formal employment." (Tr. 725) They also expressed that Plaintiff may have undiagnosed Borderline Personality Disorder. (Tr. 725-26) Despite these limitations, however, the authors suggested that, "with the appropriate treatment strategies and assuming [Plaintiff's] active engagement and willingness to use what he learns, there is every reason to believe that he can and will choreograph a life that . . . includes full employment." (Tr. 727) They expressed their "hope that the State will support his efforts by granting him disability, at least on a time-limited basis." (Tr. 727)

Plaintiff also submitted a Vocational Evaluation, which Dr. Gleditsch and Ms. Stanton referenced in their letter. In the Evaluation Report, examiner Duane Cranford found that Plaintiff "doesn't present as a good candidate for employment" and recommended that he suspend his search for a job and focus on trying to "stabilize his mental health, manage his daily life activities, and develop better coping strategies." (Tr. 343) He further suggested that Plaintiff could very well arrive "at a healthier place mentally" where he was "stable enough to work," and offered to assist Plaintiff in finding an appropriate occupation at that time. (Tr. 343) The evaluator recommended that Plaintiff transition into this state by beginning with volunteering, which could help him "learn new coping skills, manage his anxiety, and work on his interpersonal skills." (Tr. 343) He also noted that, Plaintiff could probably only successfully undertake volunteer work if he developed a "strategic plan to help [him] manage his personal needs (e.g. eating healthy, cleaning his house, washing his clothes, and bathing regularly)." (Tr. 343) Cranford's report indicates that he evaluated Plaintiff on March 2, 2012, almost four months after the ALJ's decision date.

With regard to his medical records, Plaintiff suggests that they warrant remand because they include GAF scores that were not before the ALJ. The Appeals Council did not address the

8

GAF scores in its denial of review. "The GAF scale judges an individual's level of functioning only at the time of evaluation." *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8 (W.D.N.C. Mar. 27, 2014) (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 30 (4th ed.1994)). It is, in other words, "a snapshot of functioning at a given moment." *Minish v. Astrue*, No. 1:12CV01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013) (quoting *Fowler v. Astrue*, No. 1:10-cv-123, 2011 WL 5974279, at *3 (W.D.N.C.2011)). "A GAF score of 41-50 indicates that the person has serious symptoms or serious impairment in social, occupational or school functioning." *Id.* Nevertheless, scores in that range are not conclusive evidence that a claimant's mental impairments preclude him from all work. *Carringer*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8.

As this Court, and others, have recognized, the mere fact of a diagnosis does not speak to the severity of a Plaintiff's condition—rather, "there must be evidence that the impairment also impacted [his] ability to perform basic work activities." *Carringer*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8; *see also Pope v. Colvin*, No. 2:13-CV-00008-FDW, 2014 WL 944609, at *3 (W.D.N.C. Mar. 11, 2014) ("[A] GAF score is not dispositive of anything in and of itself and has no direct legal or medical correlation the severity requirements of social security regulations."). For this reason, neither the regulations nor this Circuit's caselaw requires the ALJ to base its determination of a claimant's mental RFC wholly on GAF scores. *Pope*, No. 2:13-CV-00008-FDW, 2014 WL 944609, at *3.

Here, the new medical records attributed the following different GAF scores to Plaintiff: (1) a score of 60 on October 12, 2012 (Tr. 512); (2) a score of 40 on October 11, 2012 (Tr. 514); (3) a score of 30 on October 10, 2012 (Tr. 516); (4) a score of 55 on September 20, 2012 (Tr. 526); (5) a score of 58 on August 22, 2012 (Tr. 527); (6) scores of 40 and 50 on June 6 and 21,

2012 (Tr. 530, 545); (7) a score between 40 and 50 on June 6, 2012 (Tr. 560-62); (8) a scores of between 35 and 38 from May 24, 2012 to June 6, 2012 (Tr. 557-78, 581, 606); (9) a score of 55 on January 4, 2012 (Tr. 654); (10) a score of 53 on November 17, 2011 (Tr. 658); (11) a score of 53 on September 13, 2012 (Tr. 660); (12) a score of 50 on July 27, 2011 (Tr. 674-75); (13) a score of 53 on May 24, 2011 (Tr. 703); and (13) a score of 58 on February 3, 2011 (Tr. 705-06). Notably, four of these scores were assessed during the time period that the ALJ considered and three scores ranging between 50 and 53 were substantially lower than the GAF score that the ALJ noted—namely a June 2010 score of 60-65. (Tr. 54) Additionally, the ALJ failed to mention a GAF score of 45 that was in the record before him at the time of his decision.

It appears to the Court that remand is warranted in light of this new evidence. For starters, the record before the ALJ apparently did not contain the opinion of a treating physician like Dr. Gleditsch. Rather, the ALJ was required to rely in large part on the nondiagnostic observations of Ms. Ford, and two consultative exams with state psychological consultants— each of which was based on a single visit with Plaintiff. As the Fourth Circuit has instructed, "[i]n view of the weight afforded the opinion of a treating physician . . . remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician." *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). As an additional matter, the new evidence paints a vastly different picture of Plaintiff than the state psychological consultants' reports. Absent reasoning from the Appeals Council, or a greater body of record evidence to support the ALJ's determination that Plaintiff maintains the mental RFC to perform the nonexertional requirements of an occupation, the Court cannot say with certainty that substantial evidence supports the Commissioner's decision.

Although Defendant argues that the doctor's letter is dated November 12, 2012, this Court has made clear that the date of a document is not dispositive. *Savage*, No. 3:12-CV-00394-RJC, 2013 WL 4495194, at *4. Indeed, the letter specifically stated that Plaintiff had been a client at the authors' facility since 2008 and detailed his history back to that time. While it is true that the Court need not presume that the Appeals Council's decision to disregard evidence was based solely on an examination date, Defendant has supplied no other grounds for finding that the Vocational Evaluation and letter are neither new nor material. Defendant also suggests that all GAF scores dating after the ALJ's decision date should be discarded. Again, the Court finds that they cannot be rejected solely on the basis of the date on which they were assessed. The group of scores, taken as a whole, suggest that Plaintiff often experiences markedly low levels of functioning as a result of his bipolar disorder and that his ability to function fluctuates dramatically. Additionally, although Defendant correctly points out that GAF scores are only relevant to the extent that they are corroborated by supporting evidence, it appears that the GAF scores may be supported by substantial other evidence, including (1) the new letter and Vocational Evaluation, (2) the Third Party Report submitted by Plaintiff's mother, (3) many observations of Plaintiff's demeanor by Ms. Ford. Indeed, while the ALJ cited to Ms. Ford's notes to the extent they detailed positive visits with Plaintiff, Plaintiff's own statements, or impressions that Plaintiff should try harder to work, he did not mention the plethora of contradictory observations by Ms. Ford.

For example, on November 2, 2009, Ms. Ford observed that Plaintiff was angry toward his father, dejected about his poor relationships with others, pessimistic, and described getting out of bed and performing activities of daily living as "an ordeal." (Tr. 447) Ms. Ford also noted that she had viewed pictures of Plaintiff's home, which depicted "massive clutter and

disarray." (Tr. 447) On November 17, 2009, Ms. Ford described Plaintiff as "more stable" but still unable to get his home or business plan organized. (Tr. 448) On December 1, 2009, Ms. Ford found that while Plaintiff was "stable on his meds" he was also making "negative self statements" on a variety of subjects. (Tr. 449) On December 16, 2009, Plaintiff's house was still "in chaos" and he spoke about "conflicts with others" and his feeling of being "scapegoated." (Tr. 450). On December 30, 2009, Plaintiff and Ms. Ford spoke extensively about his difficulties in the workplace, and she recorded that she had assigned him the "homework" of "download[ing] paperwork for disability." (Tr. 451) On January 21, 2010, Plaintiff had been experiencing mood swings but appeared to have stabilized after obtaining medication to assist with his difficulty sleeping. (Tr. 452)

On February 11, 2010, Plaintiff presented with sleep disturbances, anxiety, and fatigue. (Tr. 460) Ms. Ford found that Plaintiff was having trouble toning down his aggression, and conducted a role playing exercise to illustrate the difference between assertive communications and aggression. (Tr. 460) On April 23, 2010, Ms. Ford noted that although Plaintiff was taking his medication as scheduled he still experienced "some mood swings" and appeared to be "obsessing about various things." (Tr. 459) Plaintiff had not progressed in many areas in which he needed improvements because it was hard for him to "prioritize activities." (Tr. 459) She described him as "still easily distracted and overwhelmed by [the] long list of things to do." (Tr. 459) On July 27, 2010, Ms. Ford noted that Plaintiff had stopped doing his homework tasks and had no motivation to change. (Tr. 489) While the ALJ was of course under no obligation to mention all of Ms. Ford's statements about Plaintiff, it appears to the Court that, when considered along with the new evidence Plaintiff submitted to the Appeals Council, her

12

observations regarding Plaintiff's moods swings and lack of improvement over a period of months undermine a finding that the ALJ's determination was supported by substantial evidence.

## IV. CONCLUSION

The Court finds that the new evidence Plaintiff submitted to the Appeals Council warrants remand. Because remand is warranted on this basis, the Court has not addressed all of Plaintiff's assignments of error. However, on remand, the ALJ should conduct its evaluation in accordance with the requirements of the Fourth Circuit's decision in *Mascio v. Colvin*. This means the ALJ should specifically address Plaintiff's ability to stay on task and perform the requisite nonexertional functions for an entire workday, 780 F.3d at 638, and explicitly compare Plaintiff's allegations of his symptoms to the other evidence in the record, rather than to his RFC, *see id.* at 639.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) Plaintiff's Motion for Summary Judgment be **GRANTED**;

(2) Defendant's Motion for Summary Judgment be **DENIED**;

(3) the decision of the Commissioner, denying the relief sought be **VACATED**; and

(4) this matter be remanded for further proceedings consistent with this Order.

Signed: March 15, 2016

Graham C. Mullen
United States District Judge